## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

**Dennis Thompson,**

      **Plaintiff,**

v.

**Illinois Department of Corrections,**
**Rob Jeffreys,**
**Angela Crain,**
**Kimberly Martin,**
**Anthony Willis, and**
**Wexford Health Sources Inc.**

      **Defendants.**

**Case No. 22-cv-00436-SPM**

## <u>MEMORANDUM AND ORDER</u>

**MCGLYNN, District Judge:**

Plaintiff Dennis Thompson, an inmate of the Illinois Department of Corrections who is currently incarcerated at Menard Correctional Center, brings this civil action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights.[1] Thompson claims that he has not been receiving adequate medical treatment for his injuries. He requests injunctive relief, monetary damages, punitive damages, and court orders requiring the scheduling of medical appointments.

The Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, any portion of a complaint that is legally

---

[1] Plaintiff used a civil rights complaint form and also marked the box for the Federal Tort Claims Act (FTCA) for actions against the United States for torts committed by federal officials. *See* 28 U.S.C. §§ 1346, 2671-2680. Because Plaintiff asserts claims arising out of his detention in a state prison, the FTCA is not applicable and therefore, any claim brought pursuant to the FTCA are dismissed.

frivolous, malicious, fails to state a claim upon which relief may be granted, or requests money damages from a defendant who by law is immune from such relief must be dismissed. *See* 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of a pro se complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## THE COMPLAINT

Thompson alleges the following: As a result of numerous "serious medical conditions," he suffers from severe chronic pain, "limited range of motion in [his] shoulders, arm and back," and "difficulty walking," among other symptoms.[2] (Doc. 1, p. 6, 6M). Thus, he relies on staff at Menard to administer daily medications and coordinate his medical appointments—responsibilities that the staff did not uphold. Indeed, "numerous Menard and/or Wexford officials have allowed [his] conditions to fester." (*Id.* at p. 6O)

With respect to the medications, doctors have prescribed Thompson to take Ibuprofen, Methocarbamol, Neurontin (three times), and Tramadol (three times) daily. Since these medications are considered "narcotic-like," inmates are generally not allowed to possess them and instead rely on nursing staff to administer them (Doc. 1, p. 6C). However, Thompson did not receive his medications "on several occasions (literally too many times to count)," leading to "severe pain, and withdrawals." After Thompson filed a grievance, Director of Nurses Kimberly Martin

---

[2] Thompson has provided extensive details of his medical history; however, he summarizes his conditions as follows: "left shoulder tear, severe spinal stenosis, multiple large diffuse disc bulges, multiple herniated disc [*sic*], [and] severe degenerative joint/disc disease in spine, shoulders, and left hip." (Doc. 1, p. 6).

confirmed failures to administer medication and attributed it to a shortage of nursing staff (Doc. 1, p. 6D).

On one occasion, Thompson informed a nurse that he had not received his medications for two days. The nurse responded that she was the only nurse who showed up for work that day, with the exception of Director Martin and Menard Health Care Administrator Angela Crain. The nurse further stated that "it would have been a big help if Crain or Martin helped out," since they were qualified nurses despite their supervisory positions. Meanwhile, Sergeant Bebout added that he had called medical staff several times regarding failures to administer medication—specifically about Thompson and others. Yet on this and other occasions, Director Martin and Administrator Crain did not assist with the medication, either during their shifts or in overtime. With only one nurse working, some inmates, like Thompson, inevitably did not receive their medication. (Doc. 1, p. 6D-6E).

In addition to the nurses, Warden Willis was also aware of Thompson's plight. Once, Thompson urged Warden Willis to order the nurses to stay at work until all the inmates had received their medications. (Doc. 1, p. 6F). On another occasion, Thompson showed Warden Willis his MRI results from July 2, 2021. After Warden Willis acknowledged the severity of his spinal conditions, Sergeant Bebout told Warden Willis that it was imperative to fix these conditions soon as they would only worsen (*Id.* at p. 6G).

As for the coordination of medical appointments, an orthopedist prescribed an epidural steroid spine injection for Thompson on July 21, 2021. The injection and

follow-up appointment were approved on July 30, 2021, but he still has not received the injection (Doc. 1, p. 6G). In response to an emergency grievance that Thompson filed, Director Martin explained that the injection was "not marked urgent for scheduling purposes" and that COVID-19 had created "constraints and limits of occupancy within outside facilities." Without an "urgent" marking, the injection was scheduled in the order in which appointment requests were received (*Id* at p. 6H).

These scheduling procedures were not the only factor in Thompson's continued wait for an injection. For one thing, Thompson knows of several prisoners with milder conditions whose appointments were approved after him, yet went to appointments before him. The granting of these less urgent requests occurred due to favoritism from Warden Willis or a medical administrator (Doc. 1, p. 6H-6I). Thompson also spoke to Warden Willis about his wait for an injection, and after a while, filed a grievance on October 26, 2021. Despite labeling the grievance as an emergency that merited expedited review, Warden Willis did not grant his appointments priority status after receiving the grievance and "failed to see the grievance through (i.e., whether the situation was ever remedie [*sic*])." (*Id.* at p. 6I).

Additionally, claims that COVID-19 resulted in delays to Thompson's injection were exaggerated. A greater contributor to the delays was Director Martin and Administrator Crain's dislike for Thompson and "opinion that [he] sue[s] the prison for every little thing." (Doc. 1, p. 6K-6L). Administrator Crain even told Thompson that "she will make [his] life a living hell and she just wanted [him] to suffer." (*Id.* at p. 6N).

More broadly, the failures to provide Thompson with his medication and injection appointment are not isolated instances. Rather, they are a product of larger shortcomings, namely, insufficient hiring of medical staff and the lack of orders requiring "enough staff to provide adequate care to prisoners." (Doc. 1, p. 6Q). The Illinois Department of Corrections (IDOC), Wexford Health Sources Inc., and Warden Willis are all responsible.

IDOC has known and claimed for many years, even before the COVID-19 pandemic, that they lack sufficient nurses and doctors "to properly administer adequate medical care" at Menard. (Doc. 1, p. 6R). Since Wexford has been contracted to provide medical staff at Menard, they are also responsible for these shortages—which led to Thompson missing doses of medication. Indeed, both Wexford and Warden Willis "knew prisoners were not receiving the medication" yet "failed to reasonably act." (*Id* at p. 6E). Finally, Warden Willis did not order additional nursing staff—specifically Director Martin and Administrator Crain—to assist in administering medication, despite knowing that there was only one subordinate nurse to do so.

## PRELIMINARY DISMISSALS

Thompson lists Rob Jeffreys as a defendant but does not assert any claim against him in the body of the complaint. Because merely invoking the name of a potential defendant is not sufficient to state a claim against that individual, Rob Jeffreys is dismissed without prejudice. *See Collins v. Kibort,* 143 F.3d 331, 334 (7th Cir. 1998) ("A plaintiff cannot state a claim against a defendant by including the

defendant's name in the caption.").

Thompson also brings allegations against Lindsey Miles, a medical furlough clerk at Menard who is not listed as a defendant. The Court will not treat parties not listed in the caption as defendants, and any claims against Lindsey Miles are dismissed without prejudice. *See Myles v. United States*, 416 F.3d 551, 551-552 (7th Cir. 2005) (to be properly considered a party, a defendant must be "specif[ied] in the caption").

Lastly, Thompson brings allegations against the Illinois Dept. of Corrections (IDOC). The Court will dismiss IDOC with prejudice as a defendant because, as a state entity, it cannot be sued for damages or injunctive relief under the Eleventh Amendment. *See Quick v. Ill. Dep't of Fin. & Prof'l Regulation*, 468 F. Supp. 3d 1001, 1009 (N.D. Ill. June 23, 2020).

## DISCUSSION

Based on the allegations of the Complaint, the Court finds it convenient to designate the following counts:

**Count 1:**     Eighth Amendment claim of deliberate indifference against Angela Crain, Kimberly Martin, and Anthony Willis for failing to provide the prescribed pain medication for Thompson's multiple back and shoulder injuries.

**Count 2:**     Eighth Amendment claim of deliberate indifference against Angela Crain, Kimberly Martin, Anthony Willis, and Wexford Health Sources Inc. for failing to schedule and provide the epidural steroid spine injection that was prescribed by Thompson's orthopedist.

**Count 3:**     State law medical malpractice and negligence claim against Angela Crain, Kimberly Martin, and Wexford Health Sources Inc. for denying adequate medical

treatment to Thompson by failing to provide his prescribed medications and epidural steroid spine injection.

**Count 4:**     Eighth Amendment claim of deliberate indifference against Wexford Health Sources Inc. and Anthony Willis for understaffing Menard, resulting in failures to provide Thompson his prescribed medications.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.** *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

## Count 1

Eighth Amendment claims of deliberate indifference must satisfy two requirements to survive preliminary review. A plaintiff "must allege an objectively serious medical condition and an official's deliberate indifference to that condition." *Cesal v. Moats*, 851 F.3d 714, 721 (7th Cir. 2017) (quoting *Perez v. Fenoglio*, 792 F.3d 786, 776 (7th Cir. 2015)). Both components are satisfied here.

First, Thompson's complaint sufficiently shows that he had objectively serious medical conditions. There exist two indicators of an objectively serious medical condition: they may "have either been diagnosed by a physician and demand treatment, or are 'so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Cesal*, 851 F.3d at 721 (quoting *King v. Kramer*,

680 F.3d 1013, 1018 (7th Cir. 2012)). While only one characteristic is required, both are present for Thompson.

Thompson mentions several significant medical conditions—including a superior labral tear from anterior to posterior (SLAP tear) and severe osteoarthritis—for which doctors prescribed him Ibuprofen, Methocarbamol, Neurontin, and Tramadol. (Doc. 1, p. 6A, 6C). Additionally, Thompson details one instance in which he showed Warden Willis and Sergeant Bebout his July 2, 2021 MRI results. Neither one is a medical professional, yet both made comments evincing a recognition that a doctor's attention was required. In fact, Sergeant Bebout told Warden Willis that it was imperative for Thompson to receive medical treatment lest his problems worsen (*Id.* at p. 6G). Thus, Thompson has adequately pled that he has an objectively serious medical condition.

The second requirement for a claim of deliberate indifference is the showing of an official's deliberate indifference to a plaintiff's objectively serious medical condition. Here, Thompson has sufficiently pled deliberate indifference on the part of Director Martin and Warden Willis, but not Administrator Crain.

Thompson alleges that Director Martin and Administrator Crain both have a responsibility to ensure that medication prescribed to inmates is administered every day. Both individuals knew that prescribed medications were not being distributed to inmates because of a lack of nurses. Even with this knowledge, the nurses did nothing to rectify this problem. Thompson claims that it was their responsibility to help the understaffed nurses by administering some of the pain medication

themselves, since both of them are registered nurses. (Doc. 1, p. 6D-6E).

However, for Thompson's claim to proceed against Director Martin and Administrator Crain, it is insufficient for him to show that they had general knowledge of inmates not being administered their prescribed medication. Rather, he must allege facts showing their knowledge that Thompson specifically was not receiving his prescribed medication. *See Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008) ("it is enough to show that the defendants knew of a substantial risk of harm to the inmate," referring specifically to one inmate and not the general population) (citing *Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002)).

As to Director Martin, Thompson's complaint contains sufficient facts regarding her knowledge. In response to an emergency grievance, Director Martin noted on December 21, 2021 that "per review of the individual in custody [*sic*] medical records, the individual in custody did not receive the prescribed medication or insulin due to nursing staff shortage." (Ex. 3, p. 2; Doc. 1, p. 6D). Thus, Count 1 will proceed against Director Martin.

However, there is no allegationsin the complaint that Administrator Crain knew Thompson specifically was not receiving medication. Instead, Thompson only makes general statements about Administrator Crain's knowledge. For example, he says that she was aware "on multiple occasions that only one cellhouse nurse had showed up for work," which would render it impossible for all inmates to receive their medications. (Doc. 1, p. 6D). He also noted in an October 26, 2021 grievance that Administrator Crain "is very familiar with my medical issues." (Ex. 2, p. 2). Still,

neither of these statements provides any facts showing Administrator Crain's knowledge that Thompson was not receiving his prescribed medication. Thus, Count 1 will be dismissed without prejudice as to Administrator Crain.

As for Warden Willis, Thompson's complaint includes numerous instances in which Warden Willis was informed of his unadministered medication. The response to Thompson's October 26, 2021 grievance noted that "The warden … [was] notified of the issue." (Ex. 3, p. 2). Thompson also claims that he told Warden Willis on "multiple occasions" that he was not receiving his prescribed medication for severe chronic pain. (Doc. 1, p. 6D). He even once asked Warden Willis to mandate that Administrator Crain and Director Martin help distribute pain medication to inmates. (*Id.* at p. 6F). Warden Willis, however, did not do so. Because Thompson has sufficiently alleged that Warden Willis knew of his plight yet did not act to remedy it, Count 1 will also proceed against this defendant.

## Count 2

Like Count 1, Count 2 contains a deliberate indifference claim against Administrator Crain, Director Martin, and Warden Willis. Thus, an analysis using the standards laid out in Count 1 is appropriate with respect to these defendants. However, because Wexford is a private corporation that provides medical care to Menard, different criteria must be satisfied for Thompson's claim to proceed against it.

Thompson has adequately pled that he has objectively serious medical conditions—severe spinal stenosis, degenerative disc disease, and herniations—for

which a physician, after reading his MRI images, scheduled a "caudal lumbar ESI" injection (Doc. 1, p. 6G). Thompson's requests are being ignored by Administrator Crain, Director Martin, and Warden Willis.  He claims that Director Martin and Administrator Crain are aware of his pain and the urgency of his problem, yet they continue to schedule prisoners with less severe medical conditions to be sent to appointments before him (Doc. 1, p. 6N).  He asserts that they have the ability to expedite him by marking his condition as urgent, but refuse to do so.

Furthermore, Thompson alleges that he has notified Warden Willis of his serious need for the "caudal lumbar ESI" injection.  He has filed grievances to Warden Willis about his condition, and the warden deemed his grievance to be an emergency for expedited review (Doc. 1, p. 6I).  Thompson even spoke with Warden Willis about his condition and situation.  Still, Warden Willis did not give Thompson priority over other inmates.  These claims are sufficient for Count 2 to proceed against Director Martin, Administrator Crain, and Warden Willis.

As for Wexford, Thompson's claim is viable only if he "demonstrate[s] that a constitutional deprivation occurred as the result of an express policy or custom of the government unit." *Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 766 (7th Cir. 2002). Thus, merely stating that "Wexford officials have allowed my conditions to fester" is insufficient. (Doc. 1, p. 6O). To the extent that Thompson mentions a policy, he contends that because Menard's understaffing prevented him "from receiving his pain medication on numerous occasions," his "injection should have been scheduled as priority." (*Id.* at p. 6L). However, this statement does not assert that the failure to

administer an injection occurred "as the result of" the understaffing. *Jackson,* 300 F.3d at 766. Thus, Count 2 will be dismissed without prejudice as to Wexford.

### Count 3

To bring a negligence claim under Illinois state law, a plaintiff must allege facts suggesting that the defendant owed him a duty of care, breached the duty, and that the breach was the proximate cause of the plaintiff's injury. *Thompson v. Gordon*, 948 N.E.2d 39, 45 (Ill. 2011) (citing *Iseberg v. Gross,* 879 N.E.2d 278 (2007)). The allegations are sufficient to support a negligence claim against Director Martin and Administrator Crain.

As Thompson acknowledges, Illinois state law also requires the filing of an affidavit and medical report. *See* 735 ILCS § 5/2-622. Specifically, to survive summary judgment, Thompson must "file an affidavit stating that 'there is a reasonable and meritorious cause' for litigation," accompanied by a supporting report from a physician who "has reviewed the plaintiff's medical records." *Young v. United States*, 942 F. 3d 349, 350 (7th Cir. 2019). Nonetheless, the filing or sufficiency of a report is not dispositive on his claim at this stage, so Count 3 shall proceed against Director Martin and Administrator Crain.

Thompson also brings a claim of medical malpractice and negligence against Wexford. However, besides listing Wexford as a defendant, he does not provide any facts or details about why Wexford specifically is liable under Illinois state law. Federal Rule of Civil Procedure 8(a)(2) requires "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant

fair notice of what the … claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). As Thompson has not provided a "short and plain statement" of his claim against Wexford, Count 3 will be dismissed without prejudice as to Wexford.

### Count 4

As discussed above, for Wexford to be liable as a state contractor, Thompson must "demonstrate that a constitutional deprivation occurred as the result of an express policy or custom of the government unit." *Jackson*, 300 F. 3d at 766.

Thompson's complaint sufficiently shows that he has a valid policy claim against Wexford. Thompson claims that Wexford has the responsibility of hiring enough medical professionals for the prison, yet it has consistently kept the medical team at the prison understaffed. Specifically, he claims that "[Wexford] has for years put its profits first as a priority instead of placing enough of its medical employees in I.D.O.C. prisons to provide adequate medical care." This policy of understaffing has caused Thompson on several occasions to not receive his prescribed pain medication (Doc. 1, p. 6F). Thus, Count 4 will proceed against Wexford.

Thompson also holds Warden Willis responsible for "failing to hire enough staff (medical) to provide … adequate medical care for prisoners." (Doc. 1, p. 6Q). Beyond this broad complaint, however, Thompson does not provide any evidence that Warden Willis specifically was responsible for the failure to hire more nurses or had chosen to implement such a policy. Indeed, Thompson's complaints about Warden Willis regarding the nursing shortage revolve chiefly around his failure to order Director

Martin and Administrator Crain to work overtime—complaints that are already proceeding under Count 1 (Doc. 1, p. 6E-6F, 6R). Thus, because Thompson's complaint fails to provide "more than labels and conclusions" about Warden Willis failing to hire enough nurses, Count 4 is dismissed without prejudice as to Warden Willis. *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

### DISPOSITION

For the reasons stated above, the Complaint survives preliminary review pursuant to Section 1915A. **COUNT 1** will proceed against Director Martin and Warden Willis, but is **DISMISSED without prejudice** as to Administrator Crain. **COUNT 2** will proceed against Administrator Crain, Director Martin, and Warden Willis, but is **DISMISSED without prejudice** as to Wexford Health Sources Inc. **COUNT 3** will proceed against Administrator Crain and Director Martin, but is **DISMISSED without prejudice** as to Wexford Health Sources Inc. **COUNT 4** will proceed against Wexford Health Sources Inc, but is **DISMISSED without prejudice** as to Warden Willis. Because there are no surviving claims against the Illinois Dept. of Corrections, it is dismissed with prejudice, and because there are no surviving claims against Rob Jeffreys, he is **DISMISSED without prejudice**. The Clerk of Court is **DIRECTED** to **TERMINATE** the Illinois Dept. of Corrections and Rob Jeffreys as Defendants.

Because Thompson's claims involve his medical care, the Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

The Clerk of Court shall prepare for Administrator Crain, Director Martin, Warden Willis, and Wexford Health Sources Inc. the following: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is directed to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the defendant, and the Court will require the defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Thompson, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, his last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to file an appropriate responsive pleading to the Complaint in a timely manner and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants only need to respond to the issues stated in this Merit Review Order.**

If judgment is rendered against Thompson and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the

costs, even though his application to proceed *in forma pauperis* was granted. *See* 28

U.S.C. § 1915(f)(2)(A).

Finally, Thompson is **ADVISED** that he is under a continuing obligation to

keep the Clerk of Court and each opposing party informed of any change in his

address; the Court will not independently investigate his whereabouts. This shall be

done in writing and not later than 7 days after a transfer or other change in address

occurs. Failure to comply with this order will cause a delay in the transmission of

court documents and may result in dismissal of this action for want of prosecution.

*See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  July 22, 2022**

*s/Stephen P. McGlynn*
**STEPHEN P. MCGLYNN**
**United States District Judge**

**NOTICE TO PLAINTIFF**
The Court will take the necessary steps to notify the appropriate defendants of your
lawsuit and serve them with a copy of your complaint. After service has been
achieved, the defendants will enter their appearance and file an Answer to the
complaint. It will likely take at least **60 days** from the date of this Order to receive
the defendants' Answers, but it is entirely possible that it will take **90 days** or more.
When all of the defendants have filed Answers, the Court will enter a Scheduling
Order containing important information on deadlines, discovery, and procedures.
Plaintiff is advised to wait until counsel has appeared for the defendants before filing
any motions, to give the defendants notice and an opportunity to respond to those
motions. Motions filed before defendants' counsel has filed an appearance will
generally be denied as premature. Plaintiff need not submit any evidence to the Court
at his time, unless otherwise directed by the Court.