IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| DENNIS THOMPSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 22-cv-436-RJD |
| | ) | |
| KIMBERLY MARTIN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

**DALY, Magistrate Judge:**

Plaintiff, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), filed this lawsuit pursuant to 42 U.S.C. § 1983 alleging his constitutional rights were violated while he was incarcerated at Menard Correctional Center ("Menard"). Plaintiff alleges he suffers from several health conditions that cause severe chronic pain and staff at Menard failed to administer his medications and coordinate his medical appointments. Following a threshold review of Plaintiff's complaint pursuant to 28 U.S.C. § 1915A, Plaintiff proceeds on the following claims:

Count One: Eighth Amendment claim of deliberate indifference against Kimberly Martin and Anthony Wills for failing to provide the prescribed pain medication for Plaintiff's multiple back and shoulder injuries.

Count Two: Eighth Amendment claim of deliberate indifference against Angela Crain, Kimberly Martin, and Anthony Wills for failing to schedule and provide the epidural steroid spine injection that was prescribed by Plaintiff's orthopedist.

Count Three: State law medical malpractice and negligence claim against Angela Crain and Kimberly Martin for denying adequate medical treatment to Plaintiff by failing to provide his prescribed medications and epidural steroid spine injection.

Count Four: Eighth Amendment claim of deliberate indifference against

Wexford Health Sources, Inc. for understaffing Menard, resulting in failures to provide Plaintiff his prescribed medications.

This matter is now before the Court on the Motion to Enforce Settlement filed by Defendant Kimberly Martin (Doc. 55), Plaintiff's Second Motion for Entry of Default Against Kimberly Butler (Doc. 56), Plaintiff's Motion to Strike (Doc. 57), Plaintiff's Motion to Impose Sanctions Against AAG Christine McClimans (Doc. 60), Plaintiff's Motion to Supplement Response to Motion to Enforce Settlement (Doc. 62), and Plaintiff's Motion to Expand Motion to Impose Sanctions to Include Attorney Areda Johnson (Doc. 64)

The Court's rulings as to each motion is set forth below.

## **Background**

Plaintiff initiated this action on March 4, 2022 alleging violations of his constitutional rights pursuant to 42 U.S.C. § 1983.   As previously mentioned, Plaintiff was allowed to proceed on four counts and is proceeding in this action against four defendants: (1) Kimberly Martin, the Director of Nurses at Menard Correctional Center; (2) Angela Crain, the Menard Healthcare Unit Administrator; (3) Anthony Wills, the Menard Warden; and (4) Wexford Health Sources, Inc.

Defendant Wexford filed its answer to Plaintiff's complaint on September 1, 2022 (Doc. 22), and Defendants Crain and Wills filed their answers on September 13, 2022 (Doc. 24). Defendant Martin executed a waiver of service in September 2022, and her answer was due November 14, 2022 (Doc. 27).

On December 5, 2022, counsel for Defendants Crain and Wills filed a notice informing the Court they had reached a settlement agreement with Plaintiff, and the only remaining step was the disbursement of settlement funds (Doc. 29).   On December 14, 2022, Plaintiff sought a Clerk's entry of default against Defendant Martin, citing her failure to file an answer by the deadline of

November 14, 2022 (Doc. 30).   The Court granted Plaintiff's motion for entry of default on January 9, 2023, and the Clerk entered default as to Kimberly Martin on January 10, 2023 (Docs. 38-39).   Martin moved to vacate the Clerk's entry of default on January 12, 2023[1] (Doc. 46), and her motion was granted on February 3, 2023 (Doc. 52).

The undersigned held a hearing to address Defendant's notice regarding settlement on February 6, 2023 (*see* Doc. 53).   At the hearing, it became apparent there is a dispute concerning whether the settlement agreement included Defendant Kimberly Martin, whom the Assistant Attorney General had entered a notice of appearance for on January 6, 2023 (*see* Doc. 35).

## Discussion

In the Motion to Enforce (Doc. 55), Defendant Martin asserts the Settlement Agreement and General Release signed by Plaintiff on October 11, 2022 ("the Agreement") precludes Plaintiff from pursuing his claims against Martin even though she was not specifically identified as a party to the Settlement Agreement and Release.   In support of this position, Defendant Martin relies on language in the Agreement at paragraph four, wherein it states, in relevant part:

TERMS

The Parties agree to the following

\*\*\*

Plaintiff and their heirs, successors, assigns, and all other persons acting on Plaintiff's behalf release and forever discharge Defendant(s) and the State of Illinois, its agencies and their agents, former and present employees, successors, heirs, and assigns and all other persons acting on their behalf from all actions, claims and demands of any kind that arose or could have arisen from the facts alleged or claims made in the Action, whether known or unknown,

---

[1] Counsel for Martin explains that the Illinois Attorney General's Office was delayed in entering on behalf of Martin because Martin is retired from IDOC and failed to realize upon receipt of the waiver of service that she needed to contact IDOC and request representation (*see* Doc. 46).   Soon after the hearing on Defendant's notice, Defendant Martin filed the Motion to Enforce that is now before the Court.

up to the effective date of this Agreement.

Defendant Martin contends this language is clear and unambiguous that the Agreement releases her, as a former employee, from the claims in this lawsuit as said claims arise out of the same facts alleged and claims made against Defendants Crain and Wills.

Plaintiff filed a response to Defendant Martin's Motion to Enforce (Doc. 59), a Motion to Supplement his Response (Doc. 62), and a Motion to Strike the Motion to Enforce (Doc. 57).

First, with regard to Plaintiff's Motion to Strike, Plaintiff complains that Defendant Martin failed to file an answer prior to filing her motion, which Plaintiff asserts is improper and, for that reason, asserts the Motion to Enforce must be stricken.   Plaintiff has not cited, and the Court is unaware of, any rule of Federal Civil Procedure that prohibits the filing of a motion to enforce prior to filing an answer.   As such, the Court **DENIES** Plaintiff's Motion to Strike (Doc. 59). Relatedly, Plaintiff filed a Second Motion for Entry of Default against Kimberly Martin (Doc. 56), wherein Plaintiff complains default should be entered against Martin due to her failure to file an answer.   In response, Defendant Martin asks that her date for filing a responsive pleading be stayed until the Court rules on her pending Motion to Enforce Settlement, which was filed by the deadline set by the Court (Doc. 58).   Defendant Martin asserts that resolution of the Motion to Enforce directly affects the status of the litigation.   The Court agrees.   In this instance, the Motion to Enforce would necessarily moot Defendant's Martin obligation to file an answer.   Based on the posture of this case, the Court **DENIES** Plaintiff's Second Motion for Entry of Default against Kimberly Martin (Doc. 56).

Next, the Court considers Plaintiff's substantive responses to Defendant's Motion to Enforce.   The Court **GRANTS** Plaintiff's Motion to Supplement his Response (Doc. 62) and will consider the arguments included therein.   In his responses, Plaintiff asserts the correspondence he

had with the Assistant Attorney General representing Wills and Crain at the time of settlement negotiations never made mention of the inclusion of Defendant Martin in the settlement agreement, and that counsel did not represent Martin at the time of the Agreement.   Plaintiff also asserts the attorney who conducted the negotiations lied in their representation that issues pertaining to medical treatment could not be included in the Agreement (Plaintiff represents his primary goal of this lawsuit was to ensure the timely delivery of pain injections).   Plaintiff asserts because the AAG refused to include any reference to his pain injections in the Agreement, he would not have agreed to settle against Martin.   Plaintiff asserts that when he signed the Agreement it was with the understanding it only applied to Defendants Crain and Wills.

As set forth in Settlement Agreement and General Release signed by the parties, it is to be "construed and interpreted in accordance with the laws of the State of Illinois" (*see* Settlement Agreement and General Release, included as Attachment 1).   Under Illinois law, "a settlement agreement is considered a contract, and construction and enforcement of settlement agreements are governed by principles of contract law."   *Platinum Supplemental Ins., Inc. v. Guarantee Trust Life Ins. Co.*, 989 F.3d 556, 563 (7th Cir. 2021) (internal quotations and citations omitted). Contract law also governs a release within a settlement agreement.   *Id.* (citations omitted). "Where a written instrument is clear and explicit, a court must enforce the agreement as written. Both the meaning of the instrument, and the intention of the parties must be gathered from the face of the document without the assistance of parol evidence or any other extrinsic aids."   *Id.* (quoting *Rakowski v. Lucente*, 104 Ill.2d 317, 323 (Ill. 1984).   The question of whether a contract is clear or ambiguous is a question of law for the court.   *Platinum Supplemental Ins., Inc.*, 989 F.3d at 563.   Further, if an agreement is unambiguous, "a unilateral or self-induced mistake is not a valid ground for setting aside a clear and unambiguous release."   *Engineered Abrasives, Inc. v.*

*American Machine Products & Service, Inc.*, 882 F.3d 650, 653 (7th Cir. 2018) (citing *Rakowski*, 104 Ill.2d at 324 (internal quotation omitted).

Here, the Court finds the Agreement is clear that it applied to Plaintiff's claims against Defendant Martin in this lawsuit.  Defendant Martin is a former employee of IDOC, which is clearly an agency of the State of Illinois.   Further, there is no reasonable argument that the claims against Martin are distinct or arise from facts different than those alleged in this action as Plaintiff's claims against Martin also include at least one of the Defendants whom Plaintiff admittedly settled with – Crain and Wills.   Plaintiff's argument that the Agreement narrowly applied to only Crain and Wills reflects a misunderstanding on only Plaintiff's behalf.   While the Court acknowledges the introductory portion of the Agreement identifies only Defendants Crain and Wills, the entirety of the Agreement and, in particular, paragraph four of the "Terms" makes plain that in exchange for settlement money, Plaintiff agreed to more than a release of claims against Crain and Wills — he also agreed to release "the State of Illinois, its agencies and their agents, former and present employees … and all other persons acting on their behalf" from claims "that arose or could have arisen from the facts alleged or claims made in the Action."   Thus, while it is true that Plaintiff only entered into the Agreement with Crain and Wills, the Agreement released claims beyond those Defendants, and it was clearly stated as such.   *See Crosby v. City of Chicago*, 949 F.3d 358, 361 (7th Cir. 2020) (in rejecting the plaintiff's argument that the agreement's reference to a specific claim limited a general release, the Seventh Circuit found this would have been a "significant misunderstanding" of Illinois law and observed that "[i]t would have been odd for the settlement *not* to mention the underlying suit that prompted it … But the contract makes plain that in exchange for settlement money, [the plaintiff] agreed to do more than dismiss the existing suit with prejudice … The agreement was designed to resolve *all* claims related to the incident, not only the ones the

Page **6** of **9**

[the plaintiff] asserted in his first suit.").

The language of the Agreement is clear, and the general release is unambiguous that it includes claims and parties beyond Crain and Wills.   There is no dispute that Martin is a former IDOC employee.   The Court further finds the claims against Martin arose from the facts alleged or claims made in this action.   As such, the Court finds the Agreement includes the claims against Defendant Martin.

Out of an abundance of caution, and in recognition of the fact Plaintiff is proceeding *pro se*, the Court considers whether Plaintiff's misunderstanding of the scope of the release is sufficient to void the agreement.   The undersigned finds it does not.   First, as mentioned in *Engineered Abrasives*, a unilateral mistake is not sufficient to void an unambiguous release, and the release at issue is clear and unambiguous.   Moreover, under Illinois law, unilateral mistake is only available where the aggrieved party shows "by clear and convincing evidence that (1) the mistake is of a material nature; (2) the mistake is of such consequence that enforcement is unconscionable; (3) the mistake occurred notwithstanding the exercise of due care by the party seeking recission; and (4) recission can place the other party in status quo." *Zippysack LLC v. Ontel Products Corp.*, 182 F.Supp.3d 867, 872 (7th Cir. 2016) (quoting *Blue Cross Blue Shield v. BCS Ins.*, 517 F.Supp.2d 1050, 1061 (N.D. Ill. 2007)).   Plaintiff's mistake regarding the terms of the Agreement does not invalidate it as it is not unconscionable.   Under Illinois law, "a contract is unconscionable when, as viewed as a whole, it is improvident, oppressive, or totally one-sided." *Zippysack LLC*, 182 F.Supp.2d at 872-73 (internal quotation omitted).   A contract may also be unconscionable if there is an overall imbalance in the obligations and rights imposed by the bargain. *See Jackson v. Payday Financial, LLC*, 764 F.3d 765, 778 (7th Cir. 2014).   The terms under consideration here are standard contract provisions and their application to Martin does not evidence a significant

imbalance to the parties.   Simply put, there is no indication that the Agreement is unconscionable even when considering Plaintiff's misunderstanding of its application to Defendant Martin. While Plaintiff may have misunderstood the effect the Agreement had on his claims against Martin, such unilateral mistake does not void the agreement.

Finally, the Court recognizes Plaintiff proceeds in this matter *pro se*.   Plaintiff has not sought assignment of counsel and he willingly engaged in settlement discussions on his own.   A review of the docket evidences Plaintiff's competence and understanding of the law and court procedures.   It was Plaintiff's right to conduct his own settlement negotiations and his status as a *pro se* litigant does not affect the binding Agreement he entered into with Defendants.

Based on the foregoing, Defendant Martin's Motion to Enforce Settlement (Doc. 55) is **GRANTED.**

The only remaining pending motions are Plaintiff's Motion to Impose Sanctions (Doc. 60) and Plaintiff's Motion to Expand Motion to Impose Sanctions (Doc. 64).   In these motions, Plaintiff asks the Court to sanction AAGs Christine McClimans and Areda Johnson for attempting to include Martin in the Settlement Agreement after execution and for filing a frivolous motion to enforce.

Plaintiff's Motions for Sanctions (Docs. 60, 64) are **DENIED**.   Plaintiff has not set forth the Federal Rule under which he seeks such sanctions, and the Court is unaware of any Rule that would provide for sanctions for the conduct alleged by Plaintiff.   The Court finds Defendant's motion to enforce was not frivolous, as evidenced by the Court granting the same.   The Court reiterates that a review of the timing of service and appearance for Martin and the execution of the Settlement Agreement are not suspect, and the Agreement is valid and enforceable and clearly releases Martin from the claims in this lawsuit.

Page **8** of **9**

## Conclusion

Based on the foregoing, Defendant Martin's Motion to Enforce Settlement (Doc. 55) is **GRANTED**.  The Settlement Agreement and General Release that was fully executed by the parties in October 2022 shall be enforced.  Said Agreement includes Plaintiff's claims in this lawsuit against Defendant Martin.  Defendants are ordered to deliver the agreed sum to Plaintiff (to the extent this has not yet been completed), and to notify the Court that such delivery has been made.  Upon receipt of such notice, the Court will dismiss Defendants Crain, Wills, and Martin from this matter with prejudice.

Plaintiff's Second Motion for Entry of Default Against Kimberly Butler (Doc. 56), Plaintiff's Motion to Strike (Doc. 57), Plaintiff's Motion to Impose Sanctions Against AAG Christine McClimans (Doc. 60), and Plaintiff's Motion to Expand Motion to Impose Sanctions to Include Attorney Areda Johnson (Doc. 64) are **DENIED**.  Plaintiff's Motion to Supplement Response to Motion to Enforce Settlement (Doc. 62) is **GRANTED**.

**IT IS SO ORDERED.**

**DATED: May 26, 2023**

_s/ Reona J. Daly_
**Hon. Reona J. Daly**
**United States Magistrate Judge**