IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

DENNIS THOMPSON, #B67474,  )
             )
    Plaintiff,    )
            ) Case No. 22-cv-436-RJD
vs.          )
            )
KIMBERLY MARTIN, et al.,   )
            )
    Defendants.   )

## ORDER

**DALY, Magistrate Judge:**

  This matter comes before the Court on Plaintiff's various motions.  (Docs. 74, 76, 77, 78, 79, 83, 84, 85, 86, and 87).  Plaintiff Dennis Thompson, an inmate of the Illinois Department of Corrections who is currently incarcerated at Menard Correctional Center ("Menard"), brought this civil action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights.  (Doc. 10).  Plaintiff alleges he suffers from several health conditions that cause severe chronic pain, and staff at Menard failed to administer his medications and coordinate his medical appointments.  (*Id.*).  He requests injunctive relief, monetary damages, punitive damages, and court orders requiring the scheduling of medical appointments.  (*Id.*).  Following the threshold review of the Complaint, Plaintiff was allowed to proceed on the following counts:

    Count 1:  Eighth Amendment claim of deliberate indifference against the Director of Nurses, Kimberly Martin ("Martin")[1], and Warden, Anthony Wills ("Wills"), for failing to provide the prescribed pain medication for Plaintiff's multiple back and shoulder injuries.

---

[1] On October 11, 2023, the Court was advised that Martin passed away unexpectedly on June 29, 2023, a day before this Court entered an Order dismissing all claims against her with prejudice.  (Doc. 80, p. 1).

Count 2:     Eighth Amendment claim of deliberate indifference against Angela Crain ("Crain"), Martin, and Wills for failing to schedule and provide the epidural steroid spine injection that was prescribed by Plaintiff's orthopedist.

Count 3:     State law medical malpractice and negligence claim against Crain and Martin for denying adequate medical treatment to Plaintiff by failing to provide his prescribed medications and epidural steroid spine injection.

Count 4:     Eighth Amendment claim of deliberate indifference against Wexford Health Sources Inc. ("Wexford") for understaffing Menard, resulting in failures to provide Plaintiff his prescribed medications.

(Doc. 10).  Upon Plaintiff's Motion to Convert Warden Wills's Status from Individual Capacity to Official Capacity (Doc. 70), the Court added Defendant Wills as a defendant only in his official capacity for implementing any injunctive relief that may be ordered.  (Doc. 72).

## Background

Plaintiff filed his complaint on March 4, 2022, alleging violations of his constitutional rights pursuant to 42 U.S.C. § 1983 (the "Complaint").  (Doc. 1).  Defendants Wexford, Crain, and Wills filed timely their answers.  (Doc. 22 & Doc. 24).  Defendant Martin executed a waiver of service in September 2022, and her answer was due November 14, 2022.  (Doc. 27).  On December 5, 2022, counsel for Defendants Crain and Wills filed a notice informing the Court they had reached a settlement agreement with Plaintiff (the "Settlement Agreement"), and the only remaining step was the disbursement of settlement funds.  (Doc. 29).  On December 14, 2022, Plaintiff sought a Clerk's entry of default against Defendant Martin for her failure to enter her appearance and file a responsive pleading to the Complaint by the deadline.  (Doc. 30).  The Motion was granted, and the Clerk entered default as to Defendant Martin on January 10, 2023. (Doc. 38 & Doc. 39).  On January 12, 2023, Martin moved to vacate the Clerk's entry of default, and her motion was granted on February 3, 2023.  (Doc. 46 & Doc. 52).

The undersigned held a hearing to address Defendants' notice regarding settlement. (Doc. 53). At the hearing, it became apparent there was a dispute concerning whether the Settlement Agreement included Defendant Kimberly Martin, for whom the Assistant Attorney General ("AAG") had entered a notice of appearance on January 6, 2023, after the notice of settlement. (Doc. 35). Defendant Martin subsequently filed a Motion to Enforce the Settlement Agreement, in which she argued that she was entitled to dismissal with prejudice as a former employee of the IDOC because the Settlement Agreement explicitly released Plaintiff's claims against IDOC and its current and former employees. (Doc. 55). After extensive briefing, the Court granted Martin's motion, finding that the Settlement Agreement released Plaintiff's claims in this lawsuit against Martin. (Doc. 67). The Court further ordered Defendants to deliver the agreed sum to Plaintiff and to notify the Court when such delivery had been made. (*Id.*).

Plaintiff then filed a Motion for Recruitment of Counsel (Doc. 69) and a Motion to Amend/Correct Wills's Status from Individual Capacity to Official Capacity (Doc. 70), asking that Wills remain in this case in his official capacity for purposes of injunctive relief and that the Court appoint Plaintiff counsel to assist with that claim. On June 4, 2023, Defendants Crain, Wills, and Martin filed a Status Report confirming delivery of the agreed sum, and the Court subsequently entered an order finding that Defendants had complied with the Settlement Agreement and directing the Clerk of Court to enter judgment dismissing Crain, Martin, and Wills in his individual capacity with prejudice at the close of the case. (Doc. 71 & Doc. 72). The Court further denied Plaintiff's Motion for Recruitment of Counsel but ordered that Defendant Wills be added as a defendant only in his official capacity for purposes of injunctive relief in the remaining claims. (*Id.*).

Plaintiff has since filed numerous motions as set forth below.  On July 13, 2023, Plaintiff filed a Motion for Reconsideration of the Court's finding that his claims against Defendant Martin were released pursuant to the Settlement Agreement.  (Doc. 74).  On September 27, 2023, Plaintiff also filed a Motion for Leave to File First Amended Complaint seeking to assert new allegations against Defendants Wills and Crain for their deliberate indifference to his serious medical needs that occurred after the Settlement Agreement was executed.  (Doc. 77).  He further sought to bring additional claims for deliberate indifference against Wexford for understaffing Menard's Health Care Unit ("HCU"), failing to properly prioritize prisoners' medical treatment based on the urgency and severity of their condition, and for adopting and implementing a "floating procedure" in administering mental health and narcotic medication. (*Id.*).  On that same day, Plaintiff filed a Motion to Reinstate Defendants Wills and Crain in their individual capacities for the purpose of the First Amended Complaint.  (Doc. 76).

On October 10, 2023, Plaintiff filed a renewed Motion for Recruitment of Counsel (Doc. 78), and on October 11, 2023, he filed a Motion to Supplement the same with documentation of his unsuccessful attempts to retain counsel on his own (Doc. 79).  Defendants Wills, Crain, and Martin filed a Response in Opposition to Plaintiff's Motion for Leave to file First Amended Complaint and Motion to Reinstate Defendants Wills and Crain in their individual capacities, arguing that the claims Plaintiff seeks to assert against them have been settled and released pursuant to the Settlement Agreement.  (Doc. 80).  Defendant Wexford did not file a response or otherwise oppose Plaintiff's motions.  On October 31, 2023, Plaintiff filed a Motion for Leave to File a Reply in support of his motions (Doc. 83), and on November 22, 2023, he filed a Motion to Supplement Motion for Leave to File a Reply (Doc. 85).  On January 4, 2024, Plaintiff filed a motion seeking a two-week extension of time to respond to Defendant

Wexford's first set of interrogatories. (Doc. 86). On January 10, 2024, Plaintiff filed a motion seeking to substitute Martin's Estate as a defendant in this case. (Doc. 87).

## Discussion

**Motion for Reconsideration (Doc. 74) and Motion to Add Kimberly Martin's Estate as a Defendant (Doc. 87).**

In his Motion for Reconsideration (Doc. 74), Plaintiff urges the Court to reconsider its finding that Plaintiff's claims against Martin were released under the Settlement Agreement (Doc. 67) and Martin's subsequent dismissal with prejudice (Doc. 72). He argues that the Court erred in granting Defendant Martin's Motion to Enforce (Doc. 55) because this was effectively a dispositive motion, and the court should have drawn all reasonable references in the light most favorable to Plaintiff as the nonmoving party. (Doc. 74, p. 2). He further contests that all settlement negotiations took place while the former AAG in this case was representing only Defendants Crain and Wills and before he entered his appearance on behalf of Defendant Martin. (*Id.*). He argues, therefore, that the Settlement Agreement cannot possibly release his claims against Defendant Martin where Defendant Martin was not a named party thereto. (*Id.*). Plaintiff relies on *Heard v. Tilden*, 809 F.3d 974 (7th Cir. 2016), in which the Seventh Circuit Court of Appeals found that a general release in which the prisoner released defendants from liability for all claims in his prior § 1983 action for deliberate indifference to his need for hernia surgery did not release the provider from liability in a subsequent action regarding his recurrent hernia that developed after his surgery for hernia in the first action. *Heard*, 809 F.3d 974. Finally, Plaintiff argues that this Court erred in finding that the Settlement Agreement encompassed his claims against Martin because those claims were not identical to those against Defendants Crain and Wills. (Doc. 74, p. 7). Defendant Martin did not file a response in opposition to Plaintiff's Motion for Reconsideration.

The Court reviews Plaintiff's Motion for Reconsideration (Doc. 74) under Federal Rule of Civil Procedure 54(b), which states as follows:

> [A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

FED. R. CIV. P. 54(b); *see also Bilek v. Am. Home Mortg. Servicing*, No. 07 C 4147, 2010 WL 3306912, at *1 (N.D. Ill. Aug. 19, 2010).[2]  Rule 54(b) codifies a court's "inherent authority to reconsider its interlocutory orders because such orders may be revised at any time before the Court enters a final judgment."  *Bilek*, No. 07 C 4147, 2010 WL 3306912, at *1 (citing *Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 12, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) ("every order short of a final decree is subject to reopening at the discretion of the district judge"); *Sims v. EGA Prods., Inc.,* 475 F.3d 865, 870 (7th Cir.2007) ("nonfinal orders are generally modifiable")).  However, a motion under Rule 54(b) can only be utilized "to correct manifest errors of law or fact or to present newly discovered evidence."  *Keene Corp. v. International Fidelity Insurance Co.*, 561 F.Supp. 656, 665 (N.D.Ill.1982), *aff'd*, 736 F.2d 388 (7th Cir.1984).  A manifest error occurs where there is "a wholesale disregard, misapplication, or failure to recognize controlling precedent" and "is not demonstrated by the disappointment of the losing party." *Oto v. Metropolitan Life Ins. Co.,* 224 F.3d 601, 606 (7th Cir.2000).

As set forth above, here, Plaintiff does not argue for reconsideration of the Court's order due to newly discovered evidence.  Instead, he claims that the Court misconstrued the already

---

[2] The Court's Order dismissing Defendants Crain, Martin, and Wills in his individual capacity with prejudice (Doc. 72) does not include a determination of no just reason to delay its finality and further expressly directs the Clerk of Court to enter judgment only at the close of this case. Accordingly, Order (Doc. 72) is not final and is subject to review under Rule 54(b).

presented evidence and misapplied the law. (Doc. 74, pp. 2-7). Accordingly, Plaintiff's Motion for Reconsideration may be granted only upon a finding of a manifest error. In its order, the Court clearly considered Plaintiff's argument that the Settlement Agreement could not possibly release his claims against Defendant Martin because she was not represented by the AAG at the time the Settlement Agreement was being negotiated, and she was not a named party to the Settlement Agreement. As outlined in the Court's prior order, the fact that Martin was not a named party to the Settlement Agreement does not preclude a finding that the Settlement Agreement released Plaintiff's claims against her.

Under Illinois law, there is a strong presumption "that parties intend a contract to apply solely to themselves." *Bank of Am. Nat. Ass'n v. Bassman FBT, L.L.C.*, 2012 IL App (2d) 110729, ¶ 27, 981 N.E.2d 1, 11, *as modified on denial of reh'g* (Dec. 7, 2012) (citing *Martis v. Grinnell Mutual Reinsurance Co.,* 388 Ill.App.3d 1017, 1020, 329 Ill.Dec. 82, 905 N.E.2d 920 (2009)). However, Illinois courts recognize the third-party intended beneficiary exception to that general rule. *Gallagher Corp. v. Russ,* 309 Ill.App.3d 192, 200, 242 Ill.Dec. 326, 721 N.E.2d 605 (1999); *XL Disposal Corp. v. John Sexton Contractors Co.,* 168 Ill.2d 355, 361, 213 Ill.Dec. 665, 659 N.E.2d 1312 (1995). Thus, when the parties to the contract intended to confer a direct benefit on a purported third party, that third-party intended beneficiary is entitled to enforce the rights under the contract. *Id.* Further, a written instrument that is clear and explicit must be enforced as written. *Id.* "Both the meaning of the instrument, and the intention of the parties must be gathered from the face of the document without the assistance of parol evidence or any other extrinsic aids." *Id.* (quoting *Rakowski v. Lucente,* 104 Ill.2d 317, 323 (1984)). Whether a contract is clear or ambiguous is a question of law for the court to determine. *Platinum Supplemental Ins., Inc.*, 989 F.3d at 563. Further, if an agreement is unambiguous, "a unilateral

or self-induced mistake is not a valid ground for setting aside a clear and unambiguous release."

*Engineered Abrasives, Inc. v. American Machine Products & Service, Inc.*, 882 F.3d 650, 653

(7th Cir. 2018) (citing *Rakowski*, 104 Ill.2d at 324 (internal quotation omitted)).

Here, Term Four of the Settlement Agreement clearly and unambiguously states that

Plaintiff and anyone acting on his behalf

> release and forever discharge Defendant(s) and the State of Illinois, its agencies
> and their agents, *former and present employees*, successors, heirs . . . from all
> actions, claims and demands of any kind that arose or could have arisen from the
> facts alleged or claims made in the Action, whether known or unknown.

(Doc. 67, p. 3) (emphasis added).  There is no dispute that Defendant Martin was a former

employee of the State of Illinois.  Thus, Plaintiff's claims against her explicitly fall within the

purview of the Settlement Agreement, even though Martin was not a party to the same.  In other

words, Defendant Martin, while not a named party to the Settlement Agreement, was an intended

third-party beneficiary and entitled to enforce the rights conferred to her under it.

Plaintiff's reliance on *Heard* is misplaced.  At issue there was whether the settlement

agreement under which a prisoner released a health care provider and its employee from liability

in the prisoner's prior Eighth Amendment § 1983 action for deliberate indifference to his need

for hernia surgery released the provider from liability regarding the prisoner's recurrent hernia,

which developed after prisoner's surgery for hernia in his first action.  *Heard*, 809 F.3d 974.  In

this case, however, there is no dispute that Plaintiff's claims against Martin arose out of the same

facts and occurrence as those against Wills and Crain and relate to the same alleged violation,

*i.e.*, Defendants' deliberate indifference to Plaintiff's serious medical need in the form of failing

to provide him prescribed pain medication for his multiple back and shoulder injuries and failing

to schedule and provide the epidural steroid spine injection prescribed by Plaintiff's orthopedist.

Martin's involvement was clearly contemplated as arising out of the same facts because Plaintiff

alleged the same.  Plaintiff's argument that his claims against Defendant Martin are not identical to those of Defendants Crain and Wills is also of no avail.  The express language of the Settlement Agreement states that Plaintiff releases "all actions, claims and demands of any kind that arose or could have arisen from the facts alleged or claims made in the Action, whether known or unknown."  There is no requirement that the released claims are identical.  For these reasons, the Court **FINDS** that there was no manifest error in its Order Granting Defendant Martin's Motion to Enforce (Doc. 67).  Accordingly, Plaintiff's Motion for Reconsideration (Doc. 74) is **DENIED**.

**Motion for Leave to File First Amended Complaint (Doc. 77), Motion for Leave to File a Reply (Doc. 83), and Motion to Supplement (Doc. 85).**

As a preliminary matter, the Court **GRANTS** Plaintiff's Motion for Leave to File a Reply (Doc. 83) and his Motion to Supplement Motion for Leave to File a Reply (Doc. 85).  The Court will consider Plaintiff's Reply and supplemental documents in ruling on his Motion for Leave to File First Amended Complaint.  For the reasons set forth below, the Motion for Leave to File First Amended Complaint (Doc. 77) is **GRANTED in part and DENIED in part.**

Amendments of pleadings are governed under Rule 15, which provides that a party may amend its pleadings after a responsive pleading has been served "only by leave of the court or by written consent of the adverse party."  FED. R. CIV. P. 15(a); *Campania Mgmt. Co. v. Rooks, Pitts & Poust*, 290 F.3d 843, 848–49 (7th Cir. 2002).  While leave to amend should be given liberally, in their sound discretion, courts may deny a proposed amendment if the moving party has unduly delayed filing the motion, if the opposing party would suffer undue prejudice, or if the pleading is futile.  *Foman v. Davis,* 371 U.S. 178, 181–82, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Bethany Pharm. Co. v. QVC Inc.,* 241 F.3d 854, 861 (7th Cir.2001).  Further, a plaintiff can typically seek relief only for events that have already occurred, not on subsequently arising matters.  *Chicago*

*Reg'l Council of Carpenters v. Vill. of Schaumburg*, 644 F.3d 353, 356–57 (7th Cir. 2011) (citing *Grain Traders, Inc. v. Citibank, N.A.,* 160 F.3d 97, 105 (2d Cir.1998)).  However, "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented."  FED. R. CIV. P. 15(d).  Supplementing a complaint with allegations that occurred subsequent to its filing is not an "absolute right" and the "court has substantial discretion either to permit or to deny such a motion."  *Chicago Reg'l Council of Carpenters*, 644 F.3d 353, 356–57 (7th Cir. 2011) (holding that the district court did not abuse its discretion when it denied the plaintiff's motion to supplement its complaint with facts that occurred two months after its filing, where the plaintiff's motion was filed only after his motion for summary judgment was denied).  A court does not abuse its discretion when it denies a motion to supplement the complaint because supplementation would raise new issues, necessitate new or further discovery, and cause undue delay.  *Otis Clapp & Son, Inc. v. Filmore Vitamin Co.*, 754 F.2d 738, 743 (7th Cir. 1985).

Plaintiff submitted a Proposed Amended Complaint containing the following six counts, which are addressed below.  Any other claim that is mentioned in the proposed amended complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled.  *See Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007) (a claim must state "enough facts" to be "plausible on its face").

> **Count 1:**     **Eighth Amendment claim of deliberate indifference against Crain, Martin, and Wills for failing to provide the prescribed pain medication for Thompson's multiple back and shoulder injuries.**
>
> **Count 2:**     **Eighth Amendment claim of deliberate indifference against Crain, Martin, Wills, and Wexford for failing to schedule and provide the epidural steroid spine injection that was prescribed by Thompson's orthopedist.**

Although Plaintiff uses the same headings to identify these counts as in the previous Complaint, he has added allegations.  In Counts 1 and 2 of the Proposed Amended Complaint, Plaintiff purports to state Eighth Amendment claims of deliberate indifference against Crain, Martin, and Wills for continually understaffing Menard's HCU, in part seeking to resurrect claims dismissed in the initial screening order.  (Proposed Amended Complaint, pp. 6-6F).  In Count 1, Plaintiff claims that the understaffing resulted in him not being provided his prescribed pain medication for his multiple back and shoulder injuries.  (Proposed Amended Complaint, pp. 6-6D).  In Count 2, he claims that the HCU's understaffing has resulted in him not being scheduled for and provided the epidural steroid spine injection that was prescribed by his orthopedist and further not receiving appropriate treatment for his remaining herniations. (Proposed Amended Complaint, pp. 6-6F).

In these counts, Plaintiff partially restates the claims asserted under Counts 1 and 2 of the Complaint.  (Doc. 83, pp. 2-6; Proposed Amended Complaint, p. 6, 6D).  Plaintiff acknowledges that he previously settled those claims with Defendants Crain and Wills pursuant to the Settlement Agreement.  (*Id.*).  He goes on, however, to assert new factual allegations against them for continuing deliberate indifference to his serious medical needs even after the execution of the Settlement Agreement.  (Proposed Amended Complaint, pp. 6-6F).  He emphasizes that the amendment is necessary for him to receive specific injunctive relief.  (Doc. 77, p. 2).

Specifically, in Count 1 of the Amended Complaint, Plaintiff lists days spanning from April 2023 through September 2023, where he missed his prescribed pain medication due to understaffing.  (Proposed Amended Complaint, p. 6A).  He further claims that the understaffing is partially due to Crain not being qualified to hold the position of the Head Medical Administrator and thus medical staff not wanting to work with her and, consequently, resigning.

(Proposed Amended Complaint, pp. 6B-6C).  He alleges that "under Crain and Warden Wills watch there are now staffing issues with the pharmacy department to where even over the counter medication . . . is being delivered up to two weeks late."  (Proposed Amended Complaint, pp. 6C).

Likewise, in Count 2 of the Proposed Amended Complaint, Plaintiff admits that he has now received his epidural steroid spine injection, which was at issue under Count 2 of the Complaint, and that, on December 1, 2022, he also had surgery on one of his herniations.  (*Id.*, p. 6D).  He alleges, however, that there is an ongoing practice of inappropriately prioritizing prisoners' medical visits, procedures, and surgeries.  He specifically claims that unless the treatment is marked as urgent, it is being scheduled based on a "Back Log," which works on a first come, first served basis.  (Proposed Amended Complaint, p. 6D-6F).  As a result, prisoners with mild to moderate and less painful issues are being sent for treatment before prisoners who suffer from severe medical conditions.  (*Id.*).  Plaintiff argues that the main reason for the improper prioritization of the prisoners' medical treatment is Menard's HCU being understaffed and "because the prison does not have sufficient staff to care for plaintiff in the prison HCU after the spine surgeries are done."  (*Id.*, p. 6G).  He alleges that because of that policy, and because prescribed epidural steroid injection and surgery consultation were not marked as urgent, there were significant delays in receiving those treatments, and he has still not been sent back to the Orthopedic Institute to be treated for his remaining herniations, despite "staff" knowing of his condition.  (*Id.*, pp. 6E-6F).  He states that he still cannot stand or walk long distances and that he continues to ambulate with crutches when walking, which severely exacerbates his shoulder condition.  (*Id.*, p. 6F).  He further claims that, but for the delays in receiving his first spinal surgery, he would now not need additional spinal surgeries.

**Claims against Martin, Crain, and Wills in their individual capacities.**

As set forth above, Plaintiff's claims asserted under Counts 1 and 2 of the Complaint against Martin, Crain, and Wills in his individual capacity have been released pursuant to the Settlement Agreement.  To the extent Plaintiff seeks to amend the Complaint to reassert those claims, Plaintiff's Motion to File First Amended Complaint is **DENIED** as futile.

Further, the Court is not inclined to allow Plaintiff to proceed with his claims of deliberate indifference against Martin, Crain, and Wills in his individual capacity for conduct that occurred after the execution of the Settlement Agreement.  First, the Court notes that adding new claims against those Defendants in their individual capacities will not serve Plaintiff's goal, which is to receive specific injunctive relief.  To seek injunctive relief, a prisoner must assert a claim against the warden of the institution where he or she is incarcerated in his or her official capacity because this is usually the government official responsible for carrying out the requested relief.  *See Gonzalez v. Feinerman,* 663 F.3d 311, 315 (7th Cir.2011).  Thus, to the extent Plaintiff intends to add new claims against Defendants Crain, Martin, and Wills in their individual capacities to seek injunctive relief, his motion is futile.  Further, because there are no pending claims remaining against Defendants Crain, Martin, and Wills in his individual capacity, supplementation of the complaint at this stage, after the parties have spent significant resources and time to negotiate and reach a settlement, would overcomplicate this litigation and cause undue delay.

While the Court agrees with Plaintiff's contention that the Settlement Agreement did not indefinitely release Defendants of any future constitutional violations, supplementation of the Complaint at this stage is not the proper mechanism for Plaintiff to bring those new claims. Without expressing an opinion on whether Plaintiff's claims asserted in Counts 1 and 2 of the

Proposed Amended Complaint against Crain, Martin, and Wills in their individual capacities have been released under the Settlement Agreement, the Court notes that Plaintiff may file a separate suit to assert those claims and, of course, incur a new filing fee. *See Smith v. Potter*, 513 F.3d 781, 783 (7th Cir.2008) (finding that claim preclusion did "not bar a suit based on claims that accrue[d] after a previous suit was filed"). Accordingly, Plaintiff's Motion to File First Amended Complaint is **DENIED** with respect to Plaintiff's claims asserted under Counts 1 and 2 of the Proposed Amended Complaint against Crain, Martin, and Wills in their individual capacities.

### Claims against Wexford

In Count 2 of the Proposed Amended Complaint, Plaintiff is also attempting to resurrect Count 2 of the Complaint against Wexford, which did not survive the preliminary review. (Proposed Amended Complaint, pp. 6D-6F). To state a claim against Wexford, Plaintiff must "demonstrate that a constitutional deprivation occurred as the result of an express policy or custom of the government unit." *Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 766 (7th Cir. 2002). Here, Plaintiff has sufficiently stated a policy claim against Wexford. Plaintiff asserts that Wexford is responsible for hiring enough medical professionals for the prison, yet it has consistently kept the medical team at the prison understaffed. (Proposed Amended Complaint, pp. 6D-6F). He further claims that as a result of that understaffing, the HCU personnel is unable to properly prioritize prisoners' treatment based on its urgency and severity and that prisoners instead are receiving treatment on a first-come-first-served basis. (Proposed Amended Complaint, pp. 6D-6F). He claims that as a result of that policy, he was not timely scheduled for his prescribed epidural steroid spine injection, and there was a significant delay in scheduling his spine surgery for one of his herniations. In addition, he claims that since December 1, 2022,

when he had his first spine surgery, he has not yet received any treatment for his remaining herniations.  He claims that he would not be in need of further spine surgeries but for the delays in receiving his first spinal surgery.  Accordingly, the Court finds that Plaintiff has sufficiently stated an Eighth Amendment claim of deliberate indifference against Wexford for its understaffing policy and its failure to properly prioritize prisoners' medical treatment based on the severity or urgency of their medical conditions, which resulted in Plaintiff not timely receiving treatment for his severe spinal stenosis, degenerative disc disease, and herniations. Because Plaintiff is seeking injunctive relief under this count, Plaintiff will also be allowed to proceed in this claim against Defendant Wills in his official capacity only.  For clarity and convenience, however, the Court severs Plaintiff's claim (identified by Plaintiff as Count 2) against Wexford and Wills in his official capacity as follows:

| Count 7: | Eighth Amendment claim of deliberate indifference against Wexford and Wills, in his official capacity, for understaffing Menard's HCU and for failing to prioritize prisoners' medical treatment based on the severity or urgency of their medical conditions, resulting in Plaintiff not timely receiving the prescribed epidural steroid spine injection. |
|---|---|
| Count 8: | Eighth Amendment claim of deliberate indifference against Wexford and Wills, in his official capacity, for understaffing Menard's HCU and for failing to prioritize prisoners' medical treatment based on the severity or urgency of their medical conditions, resulting in Plaintiff not having received treatment for his severe spinal stenosis, degenerative disc disease, and remaining herniations after December 1, 2022. |

Accordingly, Plaintiff's Motion for Leave to File First Amended Complaint (Doc. 77) is **DENIED** as it relates to Counts 1 and 2 of the Proposed Amended Complaint against Crain, Martin, and Wills in his individual capacity, and **GRANTED** as it relates to Defendant Wexford and Wills in his official capacity.

**Count 3:** **State law medical malpractice and negligence claim against Crain, Martin and Wexford for denying adequate medical treatment to Thompson by failing to provide his prescribed medications and epidural steroid spine injection.**

In Count 3 of the Proposed Amended Complaint, Plaintiff seeks to assert a state claim of medical malpractice against Defendants Crain, Wills, and Wexford. (Proposed Amended Complaint 6G-6H). In his reply, however, Plaintiff states that he did not intend to file a state claim of medical malpractice and that he included Count 3 in his Proposed Amended Complaint for the purpose of uniformity with the Complaint. (Doc. 83, p. 2). He further acknowledges that he has settled the claim asserted under Count 3 of the Proposed Amended Complaint with Defendants Crain and Wills. (*Id.*) Because Plaintiff concedes that he does not intend to proceed on that claim, the Motion for Leave to File First Amended Complaint (Doc. 77) is **DENIED** with respect to Count 3 of the Proposed Amended Complaint.

**Count 4:** **Eighth Amendment claim of deliberate indifference against Wexford and Wills for understaffing Menard's HCU, resulting in failure to provide Thompson his prescribed medication.**

In Count 4 of the Proposed Amended Complaint, Plaintiff asserts a deliberate indifference claim against Wexford and Wills for understaffing Menard's HCU resulting in failure to provide Thompson his prescribed medication. (Proposed Amended Complaint, pp. 6H-6J). Count 4 of the Proposed Amended Complaint essentially restates Count 4 of the Complaint. In its threshold review of the Complaint, this Court noted that Plaintiff had failed to provide "more than labels and conclusions" about Wills failing to hire enough nurses and had allowed Plaintiff to proceed on that count only against Wexford. (Doc. 10, pp. 13-14). Later on, however, and upon Plaintiff's motion, the Court reinstated Wills as a defendant in this count, but only in his official capacity and for the purpose of seeking injunctive relief. (Doc. 72, p. 3). Because in Count 4 of the Proposed Amended Complaint, Plaintiff merely restates Count 4 of the

Complaint, Plaintiff will be allowed to proceed in this Count against Defendant Wexford and Defendant Wills in his official capacity.

**Count 5:** **Eighth Amendment claim of deliberate indifference against Martin, Wills, Wexford, and Crain for creating a hostile and unsafe work environment for medical staff, resulting in understaffing and failures to provide Thompson with his prescribed medications.[3]**

Count 5 of the Proposed Amended Complaint substantially reasserts the factual allegations of Counts 1 and 4 of Plaintiff's Complaint.   Plaintiff alleges that Defendants Wexford, Crain and Martin have created a hostile and unsafe work environment for medical staff at Menard's HCU which has resulted in staff resigning, the HCU being severely understaffed, and Plaintiff not being provided his prescribed medications.  (Proposed Amended Complaint, pp. 6H-6J).  Plaintiff specifically asserts that nurses are being "ordered to work 24 hour shifts up to 4 and 5 times a week."  (Proposed Amended Complaint, pp. 6H-6I).  He alleges that he had conversations with nurses saying they would be "forced to resign" because "Crain and other head Administrators such as Martin" were ordering them to "stay and work over and then perform 3 times" what their workload entails.  (*Id.*).  He further claims that Crain and Martin refused to assist the understaffed nurses "walking over and administer medication" even though they both are registered nurses.  (*Id.*).  He states that if "Wexford was not putting their profits above its

---

[3] The Court notes that despite using terms pertinent to a Title VII claim of hostile work environment, the Plaintiff fails to state such a claim on several grounds.  "Under Title VII, an employer may not discriminate based on 'race, color, religion, sex, or national origin.'"  42 U.S.C. § 2000e–2(a).  To succeed on a Title VII claim, the plaintiff-employee must prove three elements: [1] he is a member of a class protected by the statute, [2] that he has been the subject of some form of adverse employment action (or that he has been subjected to a hostile work environment), and [3] that the employer took this adverse action on account of the plaintiff's membership in the protected class.  *Abrego v. Wilkie*, 907 F.3d 1004, 1012 (7th Cir. 2018)."  Here, Plaintiff has failed to allege that he has been the subject of some form of adverse employment action or that any adverse employment action was taken because of an aggrieved employee's membership in a protected class.  Thus, Plaintiff has failed to state a Title VII claim of hostile work environment, and the Court reviews and analyzes the claim asserted under Count 5 as an Eighth Amendment claim of deliberate indifference.

hiring practices more nurses would be willing to work at the institution and/or would not have resigned in the first place." (*Id.*). The only newly asserted factual allegations are that after his settlement with Defendants Crain and Wills, "more staff has resigned or taken a leave of absence" and "nurses were hired and resigned soon thereafter." (Proposed Amended Complaint, p. 6I). He claims that due to the hostile and unsafe work environment and the resulting understaffing, he "has missed even more 'cell front meds,'" and "has began to have up to 2-week delays in staff delivering the medication that he can keep in the cell such as Ibuprofen etc." (*Id.*). He thus seeks injunctive relief to address the ongoing understaffing and the resulting delays in receiving his medication. (Proposed Amended Complaint, p. 6J).

As to Plaintiff's claims against Martin, Crain, and Wills in his individual capacity for conduct that occurred up to the execution of the Settlement Agreement, the Court finds that these claims were raised in the Complaint and have been settled pursuant to the Settlement Agreement. Concerning any new factual allegations against Crain, Martin, and Wills in his individual capacity for deliberate indifference occurring in 2023, the Court finds that supplementation of the complaint at this stage will overcomplicate this litigation and cause undue delay.

As to the allegations against Wexford, for Wexford to be liable as a state contractor, Plaintiff must "demonstrate that a constitutional deprivation occurred as the result of an express policy or custom of the government unit." *Jackson*, 300 F. 3d at 766. Plaintiff's Complaint states a valid policy claim against Wexford for understaffing Menard's HCU. He sufficiently states that, as a result of that policy or practice, Plaintiff "has missed even more 'cell front meds,'" and "has began to have up to 2-week delays in staff delivering the medication that he can keep in the cell such as Ibuprofen etc." The additional factual allegations for the ongoing understaffing asserted in the Proposed Amended Complaint against Wexford substantially relate

to Plaintiff's allegations for understaffing in the Complaint. Also, unlike his claims against Crain, Wills, and Martin, Plaintiff did not release his claims against Wexford. Therefore, the Court finds that no undue delay will be caused by allowing Plaintiff to supplement his Complaint with additional factual allegations against Wexford for understaffing that occurred after the entry of the Settlement Agreement. However, because the claims asserted under Count 5 of the Proposed Amended Complaint are substantively identical to those stated under Count 4, the Court will construe and treat them as a single Eighth Amendment claim of deliberate indifference designated as Count 4. Accordingly, Plaintiff is allowed to proceed against Wexford and Wills, in his official capacity, for continually understaffing Menard's HCU, resulting in the failure to provide Thompson with his prescribed medication.

> **Count 6:** **Eighth Amendment claim of deliberate indifference against the Institution for adopting and implementing the "floating procedure" in administering prisoners' mental health and/or narcotic medication, resulting in failures to provide Thompson with his prescribed medications.**

In Count 6 of the Amended Complaint, Plaintiff purports to assert an Eighth Amendment claim of deliberate indifference against the "institution" for adopting and implementing the "floating procedure" in administering prisoners' mental health and/or narcotic medication. (Proposed Amended Complaint, pp. 6J-6L). Plaintiff specifically claims that "for approximately the last 4 years" mental health and/or narcotic medications stopped being provided to the prisoners in pill form. (Proposed Amended Complaint, p. 6K). Instead, the nurses dissolve the medication in "small clear cups with water." (*Id.*). Plaintiff claims that, because the "floating procedure" takes time, when the prison is "short staffed" only "Aids or Terminally ill prisoners receive their meds." (*Id.*). He further contends that the floating procedure is illegal because this type of medication is not intended to be taken dissolved per the warning labels. (*Id.*). He claims

that as a result of the "floating procedure," he is routinely not receiving his medication on time. (*Id.*).  Even when he is given his medication, most of the time, he does not receive the entire dose prescribed because a significant portion of the medication is wasted when the nurses are shaking the cup to dissolve it or because "a very significant amount of the medicine is still stuck at the bottom of the cup which nurses collect" and throw away.  (Proposed Amended Complaint, pp. 6K-6L).  Thus, he is seeking injunctive relief for the floating procedure to be either discontinued or placed on hold, at least for as long as the HCU remains understaffed.  (*Id.*).

First, the Court notes that Plaintiff brings his claim against the "institution" without naming a specific entity.  (Proposed Amended Complaint, pp. 6J-6L).  In the body of Count 6, however, he states that "Menards is the only institution still using the floating process." (Proposed Amended Complaint, pp. 6J-6K). Generally, the complaint must associate specific defendants with specific claims, so that defendants are put on notice of the claims brought against them and so they can properly file an answer.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); FED. R. CIV. P. 8(a)(2).  At the same time, however, the factual allegations of a pro se complaint are to be liberally construed.  *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).  Liberally construing the allegations in Count 6, the Court finds that Plaintiff intends to assert a claim against Menard for adopting and implementing the floating procedure.  Because Menard, however, is a division of the Illinois Department of Corrections, it is not subject to a Section 1983 suit.  *See Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71 (1989).  Because Plaintiff seeks injunctive relief, Menard's Warden, Defendant Wills, in his official capacity, is the government official responsible for carrying out the requested relief and, thus, the proper defendant.  *See Gonzalez v. Feinerman,* 663 F.3d 311, 315 (7th Cir.2011).

The complaint sufficiently alleges a valid deliberate indifference claim against Wills in his official capacity in that it alleges that Menard adopted and implemented the "floating procedure" in administering mental health and/or narcotic medications, which he argues is improper in that this type of medication is not supposed to be taken dissolved per their warning labels. He further claims that as a result of the "floating procedure," which is time-consuming, and due to the significant understaffing of the health care unit, many times he has not received his prescribed medication. He claims that even when he gets the medication, a considerable portion is wasted because the nurses are shaking the cup to dissolve it or because "a very significant amount of the medicine is still stuck at the bottom of the cup which nurses collect" and throw away. Thus, Count 6 can proceed against Defendant Wills in his official capacity for the purpose of seeking injunctive relief.

**Motion to Reinstate Defendants Wills and Crain in their Individual Capacities. (Doc. 76)**

Contemporaneously with his Motion to File First Amended Complaint, Plaintiff filed a Motion to Reinstate Defendants Wills and Crain in their Individual Capacities to assert claims for deliberate indifference for conduct that occurred subsequent to the execution of the Settlement Agreement. (Doc. 76). Because the Court denied Plaintiff's motion to supplement his complaint with factual allegations against Wills and Crain for conduct that occurred after the execution of the Settlement Agreement, Plaintiff's Motion to Reinstate Defendants Wills and Crain in their Individual Capacities (Doc. 76) is also **DENIED** as moot.

**Motion to Substitute Kimberly Martin's Estate as a Defendant. (Doc. 87)**

On January 10, 2024, Plaintiff filed a motion seeking to substitute Martin's Estate as a defendant in this case. (Doc. 87). Plaintiff states that substitution is required to preserve his right to appeal this Court's ruling finding that his claims against Martin were released pursuant

to the Settlement Agreement.  (*Id.*).  Under Federal Rule of Civil Procedure 25(a)(1), any party has 90 days from service of the Suggestion of Death to file a motion for substitution.  FED. R. CIV. P. 25(a)(1).  "If the motion is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed."  *Id.*  A suggestion of death has not yet been filed in this case.  However, on October 11, 2023, Defendant Martin's counsel filed a response opposing Plaintiff's motion to amend the complaint in which he advised the Court that Martin passed away unexpectedly on June 29, 2023, a day before this Court entered an Order dismissing all claims against her with prejudice.  (Doc. 80, p. 1;  Doc. 72).  While the Court dismissed all claims against Martin with prejudice, the Court directed the Clerk of Court to enter a judgment accordingly at the close of this case.  (Doc. 72).  Thus, even though no claims are currently pending against Martin, no final appealable order dismissing Martin has been entered yet.  *See* FED. R. CIV. P. 54(b); *King v. Gibbs*, 876 F.2d 1275, 1277 (7th Cir. 1989) (citing 28 U.S.C. § 1291).

The Court finds that Plaintiff's motion has merit in that if he does not timely move for substitution of Defendant Martin in accordance with Rule 25(a)(1), he might forfeit his right to appeal Defendant Martin's dismissal whenever a final order is entered.  *See* FED. R. CIV. P. 25(a)(1).  However, Plaintiff does not clarify in his motion whether an estate has been opened for Defendant Martin and does not provide the identity of the personal representative.  *See Atkins v. City of Chicago,* 547 F. 3d 869, 870 (7th Cir. 2008) (the proper party is "ordinarily the personal representative of the party who has died").  Therefore, the Attorney of Record for Defendant Martin is **DIRECTED** to notify the Court and Plaintiff as to whether an estate has been opened for Kimberly Martin or, if possible, to provide the identity of her personal representative that can be substituted in place of the deceased defendant.  The deadline to provide this information is **February**

**29, 2024**.  The deadline to file a motion to substitute is extended, and Plaintiff shall have until **March 29, 2024,** to identify a person to substitute in the place of Defendant Martin.  The Court notes, however, that substitution will be granted solely for the purpose of preserving Plaintiff's right to appeal this Court's order dismissing Defendant Martin.  All claims against Defendant Martin remain dismissed with prejudice in accordance with this Court's orders.

**Motion for Recruitment of Counsel (Doc. 78) and Motion to Supplement the same (Doc. 79)**

In his Motion for Recruitment of Counsel, Plaintiff argues that appointment of counsel is necessary because his request for injunctive relief complicates his case to an extent that exceeds his ability to litigate.  (Doc. 78).  He further claims that he cannot adequately represent himself because his underlying medical condition of degenerative joint/disc disease, chronic muscle spasms, possible cervical herniation, and rheumatoid arthritis has impaired his ability to write.  (*Id.*).  This is Plaintiff's second motion seeking the recruitment of counsel.  (*See* Doc. 69).  Plaintiff also filed a Motion to Supplement his Motion for Recruitment of Counsel (Doc. 79), attaching letters demonstrating his unsuccessful attempts to retain counsel on his own.

When presented with a request to appoint counsel, the Court must make the following inquiries: (1) has the indigent plaintiff made a reasonable attempt to obtain counsel or effectively been precluded from doing so, and (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself.  *Pruitt v. Mote*, 503 F.3d 647, 654-55 (7th Cir. 2007).  First, the Court notes that Plaintiff has demonstrated his reasonable attempts to recruit counsel on his own.  (Doc. 79).  Turning to the second prong of the test, Plaintiff's pleadings to date demonstrate an ability to articulate clearly and effectively and communicate with the Court.  As noted concerning Plaintiff's first motion for recruitment of counsel, Plaintiff's concern that the complexity of the case will increase due to him seeking injunctive relief is misplaced since the

crux of Plaintiff's claims remains the same and Plaintiff's request for injunctive relief will not make this matter significantly arduous.  Further, while the Court is sensitive to Plaintiff's health issues, it further notes that Plaintiff has filed numerous handwritten pleadings and motions in this case, including a detailed Complaint, Proposed Amended Complaint, and several lengthy motions.  Plaintiff's handwriting has thus far been neat and easy to read.  He communicates frequently with the Court and has no trouble asking for things he wants in clear handwriting.  For these reasons, Plaintiff's Motion for Recruitment of Counsel (Doc. 78) is **DENIED.**

**Motion for Leave to Brief (Doc. 84)**

In his Motion for Leave to Brief (Doc. 84), Plaintiff advises the Court that, contemporaneously with his Motion for Recruitment of Counsel (Doc. 78), he sent to the Court a Motion for Status for which he did not receive a notice of filing.  Plaintiff attaches as an exhibit to his motion the purported Motion for Status in which Plaintiff sought the Court's advice regarding discovery to be conducted in this case.  (*Id.*).  The record reveals that Plaintiff's Motion for Status was never filed with the Clerk of Court.  Plaintiff's Motion for Leave to Brief (Doc. 84) is treated as Plaintiff's purported Motion for Status and is hereby **GRANTED**. Plaintiff is **ADVISED** that per the Scheduling Order this Court entered in this case on October 26, 2023 (Doc. 82), each party is limited to serving 15 interrogatories, 15 requests for production of documents, and 10 requests for admission.  On motion, these limits may be increased for good cause shown.  The Clerk of Court is **DIRECTED** to send Plaintiff a copy of this Order and the Scheduling Order (Doc. 82).

**Motion for Extension of Time to Respond to Discovery (Doc. 86)**

On January 4, 2024, Plaintiff filed a motion seeking a two-week extension of time to respond to Defendant Wexford's first set of interrogatories.  (Doc. 86).  Plaintiff's motion is

**GRANTED**.  To the extent Plaintiff has not yet responded to Defendant Wexford's first set of interrogatories, he shall do so by **February 2, 2024**.

**Conclusion**

The following motions filed by Plaintiff are **DENIED**: Motion for Reconsideration (Doc. 74); Motion to Reinstate Defendants Wills and Crain in their Individual Capacities (Doc. 76); Motion for Recruitment of Counsel (Doc. 78); and Motion to Substitute Kimberly Martin's Estate as a Defendant.  (Doc. 87).

The following motions filed by Plaintiff are **GRANTED**: Motion to Supplement Motion for Recruitment of Counsel (Doc. 79); Motion for Leave to File a Reply (Doc. 83); Motion for Leave to Brief (Doc. 84); Motion to Supplement Motion for Leave to File (Doc. 85); and Motion for Extension of Time to Respond to Discovery (Doc. 86).

Plaintiff's Motion for Leave to File First Amended Complaint (Doc. 77) is **GRANTED IN PART AND DENIED IN PART**.  Plaintiff's First Amended Complaint supersedes the original complaint and controls the case from this point forward.  *Massey v. Helman*, 196 F.3d 727, 735 (7th Cir. 1999).

Plaintiff's First Amended Complaint proceeds as follows:

| | |
|---|---|
| **Count 4:** | **Eighth Amendment claim of deliberate indifference against Wexford and Wills in his official capacity for understaffing Menard's Health Care Unit, resulting in failure to provide Thompson his prescribed medication.** |
| **Count 6:** | **Eighth Amendment claim of deliberate indifference against Wills, in his official capacity, for adopting and implementing the "floating procedure" in administering prisoners' mental health and/or narcotic medication, resulting in failures to provide Thompson with his prescribed medications.** |
| **Count 7:** | **Eighth Amendment claim of deliberate indifference against Wexford and Wills, in his official capacity, for understaffing Menard's Health Care Unit and for failing to prioritize prisoners' medical treatment** |

based on the severity or urgency of their medical conditions, resulting in Plaintiff not timely receiving the prescribed epidural steroid spine injection.

Count 8:       Eighth Amendment claim of deliberate indifference against Wexford and Wills, in his official capacity, for understaffing Menard's Health Care Unit and for failing to prioritize prisoners' medical treatment based on the severity or urgency of their medical conditions, resulting in Plaintiff not having received treatment for his severe spinal stenosis, degenerative disc disease, and remaining herniations after December 1, 2022.

The parties and the Court will use these designations in all future pleadings and orders

unless otherwise directed by the Court.

**IT IS SO ORDERED.**

**DATED: January 25, 2024**

*s/ Reona J. Daly*

**Hon. Reona J. Daly**
**United States Magistrate Judge**